Smith *v.* McGowan.

---

SAME TERM. *Before the same Justices.*

### SMITH *vs.* McGOWAN.

The fact that ink of different colors has been used in a deed does not alone afford evidence of a fraudulent alteration of the deed. There is nothing in that circumstance, considered in itself, which will require the court, as matter of law, to exclude the instrument as evidence.

Neither is the fact that the name of the grantee, in an assignment of a lease, was written on an erasure of another name, *prima facie* evidence against the validity of the assignment; nor does it render the assignment, *per se*, a nullity. HAND, J. *dissenting.*

The existence of an erasure in a material part of a deed, is a suspicious circumstance, requiring explanation on the part of the party producing it; and it is the province of the jury to determine whether or not the explanation given is satisfactory.

But the order in which proof is to be received, on the trial, is within the discretion of the judge. It is for him to determine whether the explanation, or the deed, shall first be given in evidence. HAND, J. *dissenting.*

The defendant cannot object to the admissibility of a deed, for any purpose; on the ground that writing the name of the grantee in an assignment, upon an erasure, made the instrument *per se* a nullity.

Smith *v.* McGowan.

The title of the grantors in a lease passes by the execution of the lease, and will not be revested in them by any fraudulent alteration of an assignment of such lease; nor even by a forgery of the lease itself.

The ancient strictness with regard to alterations in a deed, in points material, which rendered the deed void, whether made by the party benefited or by a stranger, has been qualified by the modern decisions.

The objection that the real estate of one of two defendants cannot be sold upon an execution, to satisfy the judgment, while his co-defendant has sufficient personal property in the county for that purpose, can only be raised by the defendant whose land is sold, if it can be urged by any one.

Objections as to the regularity of a sale of property upon an execution cannot be raised by strangers to the execution.

THIS was an action of ejectment, tried at the Saratoga circuit, in May, 1846. The action was for the recovery of certain premises to which the plaintiff claimed title as the purchaser thereof at a sheriff's sale under an execution issued upon a judgment in the supreme court, recovered by Peter Van Ness against Isaac E. Guernsey and Lewis Smith, the plaintiff in this suit. The plaintiff showed the title to the premises to have been in Guernsey at the time of the sale upon the execution, by virtue of a lease in fee executed by the owners, in 1840, to another person, and an assignment from him to Guernsey. Various exceptions were taken by the defendant, on the trial, and the jury having found a verdict for the plaintiff, the defendant, upon a bill of exceptions, now moved for a new trial.

*J. K. Porter*, for the defendant.

*E. F. Bullard*, for the plaintiff.

WILLARD, J. The plaintiff claimed under a sheriff's sale, by virtue of an execution and judgment in which Isaac E. Guernsey was a defendant. He proved a lease in fee executed by James Jones and Samuel Irish, jr. dated January 9, 1840, and an assignment endorsed thereon, dated 11th of July, 1840, to Isaac E. Guernsey, covering the premises in question. There was no objection to the validity of the lease, or the form of execution by Jones and Irish. The title, therefore, had passed

Smith v. McGowan.

from them.   The assignment was objected to by the defendant's counsel, when it was offered in evidence, on the ground that it appeared on the face of the instrument that the name of Isaac E. Guernsey was written in different ink, over the name of another party erased.   It was admitted in evidence by the circuit judge, and the defendant's counsel excepted.

There is no principle of the common law which requires a deed to be written throughout with the *same colored ink*. The fact that ink of different colors is used may or may not afford evidence of a fraudulent alteration of an instrument.   It may often be an important item of evidence on that question. And it may be consistent with the utmost honesty.   There is nothing in the fact, considered in itself, which will require the court to exclude the instrument for that reason, as matter of law.   It may be a proper consideration for the jury, in connection with other facts, on the question of a fraudulent alteration ; but the question was not put to the court in that way.

Nor is the fact that the name of Isaac E. Guernsey was written on an erasure of another name, prima facie evidence against the validity of the assignment.   The bill of exceptions concedes that it was so written.   It is competent for the parties to write their deeds on such paper or parchment as they please, whether upon an erasure or not.   There is no law requiring a deed to be free from interlineations, blots or erasures, though it is conceded that such blemishes may cast suspicion on the instrument.   The defendant did not pretend that his name had been erased, or the name of any one from whom he derived title ; for he defended at the instance of Jones and Irish, one or both of them, the original lessors.   The execution of the lease by Jones and Irish, it has been before remarked, was not disputed. Those gentlemen had thus conveyed the premises to some· body—the original lessee, whose name is not given in the bill of exceptions.   That lessee assigned, as the plaintiff contends, to Guernsey.   But suppose he assigned to somebody else, and the name of the assignee was erased and that of Guernsey fraudulently inserted ; that fact cannot affect the rights of Jones and Irish.   Their title passed, by the execution of the lease,

Smith *v.* McGowan.

and cannot be revested in them by any fraudulent alteration of the assignment by the lessee, or even by a forgery of the lease itself. This question was examined and settled in *Lewis v. Payn,* (8 *Cowen,* 71.) It was there held that when a deed operates by way of transmutation of possession of land or other corporeal hereditament, the alteration will not divest the estate, though such alteration be material and fraudulent; but it avoids the covenants in the deed, if any; a valid deed being essential to these. So an alteration by the obligee of a bond, or the party to any other deed creating a mere chose in action in him, utterly avoids the deed, both as to the right and the remedy upon it. Even the cancelling of a deed does not divest the estate from the person in whom it was vested by the deed. (*Co. Litt.* 225, *b. note* 136.) The same doctrine is repeated in *Jackson* v. *Gould,* (7 *Wend.* 364.) The objection at the trial went upon the ground, that writing the name of the assignee upon an erasure, made the instrument *per se,* a nullity. It assumes that even if so made in the presence of forty witnesses, and upon an adequate consideration, it was a nullity. The objection is not put upon the ground that an erasure is a suspicious circumstance, calling for explanation. If the objection had taken that form, *non constat,* but that an explanation would have appeared by other parts of the instrument, or could have been shown by witnesses. In *Jackson* v. *Osborn,* (2 *Wend.* 555, 559,) erasures and interlineations in a material part of a deed, of which no notice is taken at the time of execution, are mentioned as suspicious circumstances which require some explanation on the part of the party producing it; and it is the province of the jury, says Mr. Justice Sutherland, *to determine whether or not the explanation given is satisfactory.* The order in which proof is to be received at the trial is within the discretion of the judge; and an abuse of that discretion cannot well be corrected by bill of exceptions. Whether the explanation or the deed should be first given in evidence, it belonged to the judge at the circuit to determine. They could not both be given at once. The circuit judge received the deed first. No question was raised on the ex-

Smith v. McGowan.

planatory circumstances. The exception merely raises the abstract question of its admissibility for any purpose.

There was no evidence that this erasure had been made *after* the execution of the assignment, nor by whom it was made; and assuming that an explanation of some kind was necessary, for the consideration of the jury, there was no error in permitting it to be received. The fact that the defendant, at the close of the case, did not urge the insufficiency of the explanation as one of the grounds of his motion for a nonsuit, is conclusive evidence either that the explanation was satisfactory, or that the objection itself was abandoned.

The ancient strictness with regard to alterations in a deed in points material, which rendered the deed void, whether made by the party benefited or by a stranger, as was declared in *Pigot's case*, (11 *Co*. 26,) has been qualified by subsequent cases. (*See* 6 *Cowen*, 748, 749, *where the cases are collected and reviewed*. 8 *Cowen*, 73. 15 *John. R.* 297, *per Platt, J. See also* 3 *D. & E.* 152; 2 *H. Bl.* 259; 6 *East*, 95; 10 *Id.* 60.) The reason for this strictness may be gathered from the ancient practice of actually bringing the deed into court for the inspection of the judges; and if, as is said in 10 *Coke*, 92, *b.* the judges found it had been rased or interlined in any material part, they adjudged it to be void; though Coke says that practice was afterwards altered. (*Per Buller, J. in Martin* v. *Miller*, 4 *T. R.* 338, 339.) The doctrine relied on from the *Touchstone*, 69, comes from the same source. And Mr. Justice Sutherland, in *Rees* v. *Overbaugh*, (6 *Cowen*, 748,) in speaking of the rigor of this ancient rule, intimates that it has been substantially exploded by the modern decisions. In early times, when few, and perhaps none of the jurors could read or write, and when deeds were drawn only by men of a particular profession; and when the rules of pleading required the actual production of the deed, corresponding in all respects with the profert, there was some propriety in the strictness contended for. But that extremely rigorous rule is not adapted to modern times. It was not settled in England, that a deed which *had been lost or destroyed by time or accident*, could be pleaded

Smith *v.* McGowan.

according to the truth of the case, without profert, until the case of *Read* v. *Brockman,* (3 *T. R.* 151.) The rules of evidence should conform themselves to the customs and wants of society. It is this plastic principle which modifies or dispenses with a rule, where the reason for the rule requires it, that imparts to the common law its highest value. A large proportion of deeds are drawn by the parties, or their neighbors, who are not professional men; and if the doctrine of *Pigot's case* and the *Touchstone* should be rigorously applied to every rasure, interlineation or obliteration, titles would be disturbed to an incalculable amount. This would certainly be the case, if we are to presume that every alteration or erasure was fraudulently made, after the execution of the deed, I am willing to adhere to the ancient rule as it has been modified and explained by Sutherland, J., in *Rees* v. *Overbaugh,* (6 *Cowen,* 748, 749,) and by Savage, Ch. J., in *Lewis* v. *Payn,* (8 *Cowen,* 72, *et. seq.*) and by the subsequent cases. There was no error committed by the circuit judge in receiving the deed in evidence, under the circumstances disclosed in the bill of exceptions.

The objection that the execution could not be enforced upon Guernsey's real estate while Smith, his co-defendant, had personal property, can only be raised by Guernsey, if it can by any body. So also, the other objections as to the regularity of the sale cannot be raised by strangers to the execution. (*See* 8 *Cowen,* 162; 1 *Id.* 114; 4 *Wend.* 462, 474; 2 *Hill,* 364; 8 *Wend.* 545; 12 *Id.* 96; 2 *R. S.* 369, § 40, 1*st ed.*)

The objection that the judgment was paid by Smith, and the assignment thereof was to him, and that therefore the subsequent proceedings were void, is not well founded in fact. The assignment was made to Mr. Ellis, and there is more evidence that he furnished the money, than that it was furnished by Smith. If this point had been in doubt, the court should have been asked to submit it to the jury. But the fair intendment from all the evidence is, that Smith procured Mr. Ellis, his attorney, to buy and take an assignment of the judgment. This he had a right to do. (*See Steele* v. *Babcock,* 1 *Hill,* 527.) This is not like *The Bank of Salina* v. *Abbott et al.* (3 *Denio,*

181.) In that case the payment was made by one defendant, and the judgment was assigned to him. This the court say cannot be done.

At law, it is well settled that *payment* of a judgment to the plaintiff or the owner, by the defendant, or by one of several defendants, extinguishes it, although such payment be made by a defendant who is a mere surety. The motion for a new trial should be denied.

CADY, P. J. concurred.

HAND, J. dissented, on the question of alteration ; he holding that the *onus* of showing the alteration to have been made before the execution and delivery of the assignment, was on the party setting up the instrument ; and that this proof must be made before the lease could be received in evidence.

New trial denied.

